UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| WILLIAM ROBERT PILKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 1:04-CV-289 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

| | | |
|---|---|---|
| WILLIAM ROBERT PILKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 1:04-CV-371 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**M E M O R A N D U M**

This matter comes before the Court on the motion of *pro se* petitioner William Robert Pilkey ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed on September 17, 2004 (Civil Action No. 1:04-CV-289, Court File No. 1, "Petition"). The next month, using a preprinted form petition, he submitted another *pro se* § 2255 motion and accompanying brief (Civil Action No. 1:04-CV-371, Court File Nos. 1, 2). The Court treated the second motion as an amended petition, rather than a second §2255 motion, and ordered Civil Action Number 1:04-CV-371 to be consolidated with Civil Action Number 1:04-CV-289 (Case No. 1:04-CV-289, Court File No. 6). The Court further found the claims in section A.1 of the petition, the portion of A.2 alleging

counsel failed to challenge the type of drug, as alleged in the indictment, and A.3 in the amended petition related back to the timely § 2255 motion (*Id.*). As the claim in A.4 (the claim based upon *Blakely v. Washington*, 542 U.S. 296 (2004)) in the amended petition does not relate back to any claims in the original petition, the Court found the untimely amendment was not allowed to include that claim.

Pursuant to the Court's Order (Court File No. 3), the Government filed a response to Petitioner's motion (Court File No. 8, "Government's Response"). The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[1] conclusively show Petitioner is not entitled to relief on the claims asserted in his Petition. Accordingly, the Court will decide those matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.), *cert. denied*, 508 U.S. 943, 113 S. Ct. 2423, 124 L. Ed. 2d 644 (1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On February 16, 2001, agents with the Tennessee Bureau of Investigation ("TBI") arrested Lynda Garcia and Jacqueline Moore in Hamilton County, in the Eastern District of Tennessee. Lynda Garcia and Jacqueline Moore had in their possession approximately fifty-five (55) pounds of marijuana. After advice and waiver of rights, Lynda Garcia said she and Petitioner were involved

---

[1]In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion (1:04-cv-289), which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:01-CR-49, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

2

in distributing marijuana. She stated she and Petitioner lived in Texas but had marijuana customers in Chattanooga, Tennessee. She further stated she had made several deliveries of marijuana to Chattanooga for Petitioner. She said Petitioner also distributed methamphetamine in Chattanooga and one of Petitioner's methamphetamine sources was Gabriel Garcia (no relation to Lynda Garcia) (Presentence Investigation Report ("PSR") at ¶¶ 9-10).

Next, a TBI confidential informant made monitored telephone calls to Petitioner to arrange for the purchase of one pound of methamphetamine. On February 26, 2001, Petitioner was arrested in Chattanooga when he attempted to deliver "what appeared to be about 500 grams of methamphetamine" (*Id.* at ¶ 11). The PSR noted specifically the suspected one pound of methamphetamine was instead determined by the crime lab to be pseudoephedrine (*Id.*).

Petitioner arrived for the meeting with the informant in a pick-up truck driven by his nephew. A loaded semi-automatic handgun was found above the sun visor on the driver's side of this truck. The nephew denied knowledge of the handgun. The nephew's father was contacted; he stated his son (Petitioner's nephew) did not own such a handgun. A duffle bag belonging to Petitioner was found at the nephew's home. Inside the bag was another handgun (*Id.* at ¶¶ 12, 13).

Lynda Garcia was questioned again on July 5, 2001. She stated she had been Petitioner's girlfriend and had helped him weigh, package, and deliver methamphetamine. She stated Petitioner received six to seven pounds of methamphetamine from Gabriel Garcia. She stated she herself purchased two pounds of methamphetamine from Petitioner (*Id.* at ¶ 15).

Petitioner was indicted on March 27, 2001. He was charged in Count One with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A), in Count Two with distribution of (actual) methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A), and in Count

3

Three with conspiracy to distribute marijuana.

Petitioner pleaded guilty on August 23, 2001, to Count One of the Indictment, charging him with conspiracy to distribute more than 500 grams of methamphetamine (*Id.* at ¶ 6). The transcript of his guilty plea shows the Court, pursuant to Fed. R. Crim. P. 11, conducted a thorough and complete inquiry to ensure Petitioner knowingly and voluntarily waived his rights, and knowingly and voluntarily entered a plea of guilty (Crim. Court File No. 64, Rearraignment Transcript at 2-6). Specifically, when the Court asked if he had any other agreement not set out in his plea agreement, Petitioner replied "[N]o sir" (*Id.* at 5). The factual basis filed with the court stated:

> Members of the Tennessee Bureau of Investigation developed a confidential informant who could purchase methamphetamine from William Robert Pilkey. During February 2001, several recorded telephone calls between Pilkey and the confidential informant were made which led to a methamphetamine purchase scheduled for February 26, 2001.
>
> On February 26, 2001, co-defendant William Robert Pilkey was arrested in Athens, Tennessee, when he distributed about one pound of suspected methamphetamine to the confidential informant. The transaction was monitored and recorded. After Pilkey was arrested, he agreed to cooperate and stated he had acquired multi-pound quantities of methamphetamine from Gabriel Garcia in Texas, which methamphetamine was eventually distributed by Pilkey in the Eastern District of Tennessee. Pilkey stated that he had been getting methamphetamine from Garcia for several months.

During the guilty plea hearing, Petitioner noted he had read the factual basis to his plea and stated it was correct (*Id.* at 10).

On December 6, 2001, Petitioner's counsel, attorney Rita LaLumia, filed five objections to the presentence report on Petitioner's behalf. Two of the objections related to minor factual inaccuracies in the presentence report, that is, the date of Petitioner's arrest and the location of the approximate 500 grams of what later turned out to be pseudoephedrine. The remaining three objections were substantive. Petitioner claimed the statements he made to law enforcement after his

4

arrest were made pursuant to USSG § 1B1.8 and could not be used against him. Petitioner additionally claimed his statements to law enforcement could not be used against him because he had been granted immunity as to any statements. Because Petitioner's other co-conspirators only had knowledge he had distributed two pounds of methamphetamine, he claimed he could only be held accountable for those two pounds. Lastly, he claimed he should receive a two-level reduction for a minor role in the offense. These objections were effectively withdrawn when they were not raised at sentencing.

After the plea but before sentencing, Petitioner filed a motion to withdraw from his plea agreement and to dismiss his counsel, Ms. LaLumia. On February 6, 2002, United States Magistrate Judge William B. Carter held a hearing to discuss the motion. Petitioner told Magistrate Judge Carter he had resolved his differences with his counsel and wished to withdraw his motion (Crim. Court File No. 95 at 5). Petitioner noted "every issue that I had on that has been taken care of." (*Id.*) Petitioner specifically stated he did not wish to withdraw from his plea agreement (*Id.* at 6).

The PSR noted Petitioner should be held accountable for the six pounds of methamphetamine discussed by Lynda Garcia (PSR at ¶ 17). The PSR also recommended a two-level enhancement for possession of a firearm (*Id.* at ¶ 23). And as noted above, the PSR disclosed the results of the lab report regarding the true identity of the substance Petitioner possessed on the date of his arrest (*Id.* at ¶ 11).

Petitioner was sentenced on April 5, 2002. Petitioner raised no objections to the PSR (Crim. Case File No. 96, April 5, 2002 Sentencing Transcript at 3). When the Court asked defense counsel if she had any objections to the PSR, counsel responded "[n]o, your Honor, all objections to the report, as I understand it, have been resolved" (*Id.*). In speaking to the Court, Petitioner said "for

5

a few months I did things that weren't right" (*Id.* at 5). At no time during the sentencing hearing did Petitioner express dissatisfaction with his counsel, nor did he claim he had a "non-prosecuting agreement" with the Government. The Court granted the Government's motion for a downward departure and sentenced Petitioner to 136 months imprisonment (*Id.* at 10, 12).

Petitioner appealed his sentence to the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") and on February 10, 2003, his sentence was affirmed. *United States v. Pilkey*, 55 Fed. Appx. 744, 2003 WL 344222 (6th Cir. Feb. 10, 2003) (unpublished). Petitioner's counsel filed an *Anders* brief indicating there were no colorable issues to appeal. *Id.* at 745. Petitioner filed his own response. *Id.*

Petitioner contended on appeal his plea was not constitutionally valid. The Sixth Circuit found his plea was valid. *Id.* at 745. Petitioner also apparently contended his base offense level should have been 32 and not 34, but the Sixth Circuit found he had forfeited that sentencing claim. *Id.* In any event, the Sixth Circuit noted Lynda Garcia's statements were used to determine drug quantity and the determination was a conservative estimate. *Id.* Petitioner also contended he was coerced into withdrawing his objection to the presentence report by the Government's threat not to move for a reduced sentence. *Id.* The Sixth Circuit rejected this argument. *Id.* Petitioner objected to the firearm enhancement, and the Sixth Circuit found no plain error by the Court. *Id.* Finally, Petitioner claimed his lawyer was ineffective because she did not take his case to trial or object to this offense level. The Sixth Circuit declined to deal with the issue on direct appeal. *Id.*

The United States Supreme Court denied certiorari on October 6, 2003. *Pilkey v. United States*, 540 U.S. 886 (2003). Petitioner filed the present § 2255 petition on September 17, 2004. On November 22, 2004, he filed an addendum (see above). Petitioner raises five claims attacking

6

the judgment in his case (Court File No. 1).  For the reasons stated below, these claims provide no basis to grant his Petition.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255.  This Court has jurisdiction under 28 U.S.C. § 1331.  The petitioner has the burden of establishing any claim asserted in the petition.  *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).  In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884, 121 S. Ct. 200, 148 L. Ed. 2d 140 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the

7

statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

At least one of Petitioner's claims rests on allegations of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of

8

the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697, 104 S. Ct. at 2069.


**III.    DISCUSSION**

Petitioner presents five grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends (1) the Government agreed not to prosecute him for certain crimes; (2) he should have only been indicted for pseudoephedrine offenses; (3) he did not

9

knowingly enter a plea agreement; (4) "enhancements" were not charged in the indictment and were not revealed to him at sentencing; and (5) he was denied effective assistance of counsel.

With the exception of a claim of ineffective assistance of counsel, a petitioner procedurally defaults a claim by failing to raise it on direct review. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610, 140 L. Ed. 2d 828 (1998). Petitioner's first four grounds for relief could have been presented to the Court or on appeal to the Sixth Circuit, but were not. Petitioner appealed his conviction but did not include these arguments. Thus, these alleged errors care considered procedurally defaulted. A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622, 118 S. Ct. at 1611; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). Petitioner has not attempted to demonstrate "cause" or "actual innocence." Nevertheless, the Court will proceed to address the merits of Petitioner's claims because Petitioner would not be entitled to relief on his claims even if they had not been procedurally defaulted.

### A. Agreement Not to Prosecute

As his first grounds, Petitioner claims the Government entered into a "non-prosecuting agreement with the petitioner." Petitioner contends the Government agreed not to prosecute him for the offenses set out in Counts One and Three of the indictment, and he should have been charged only with the allegation set out in Count Two. Petitioner claims the government promised this to him on February 27, 2001, the day he was arrested and many months before he pleaded guilty.

Petitioner did not raise this issue at his rearraignment hearing, at his hearing regarding his intent to withdraw his guilty plea and obtain another attorney, at his sentencing hearing, or on direct

10

appeal. At the rearraignment hearing, the Court conducted the following inquiry:

> THE COURT: Is this document that I'm holding in my hand the plea agreement that you have with the United States?
>
> THE DEFENDANT [here, Petitioner]: Yes, sir.
>
> THE COURT: Does this plea agreement contain all the understandings you have with the United States regarding your case?
>
> THE DEFENDANT: Yes, sir, it is.
>
> THE COURT: Are there any other understandings that you have with the United States regarding your case that are not set out in this document?
>
> THE DEFENDANT: No, sir.

(Crim. Court File No. 64 at 5). Later, when asked by the Court if the written factual basis (Crim. Court File No. 54) for the plea was true and correct, petitioner responded "[y]es" (Crim. Court File No. 64 at 10).

Petitioner has put forth no credible evidence of an agreement with the Government outside what is contained in his plea agreement. As outlined above, Petitioner's claim for relief on this ground is not supported by his own words while speaking to the Court under oath. If Petitioner is truthful in his current position then he, his counsel, and the Government attorneys perpetuated a fraud upon the Court and Petitioner perjured himself. This is not reasonable and is not worthy of belief. Thus, the Court will **DENY** Petitioner's claim for relief on this ground.

### B. Indictment Error

In Petitioner's second procedurally defaulted claim, he claims "[i]ndictment states that I distributed Methamphetamines. Gov[ernment] lab report was withheld from the Judge stating [']NO CONTROLLED SUBSTANCES DETECTED'." Petitioner argues the indictment "should have

11

been dismissed" and he "should have been re-indicted on pseudoephedrine after the AUSA received the lab report, creating a different punishment for the Petitioner."

The Government possessed substantial evidence Petitioner was involved in distributing methamphetamine. A confidential informant in Tennessee recorded telephone calls with Petitioner setting up a methamphetamine deal for $10,000 (PSR at ¶ 11). When Petitioner traveled to Tennessee to deliver the "methamphetamine," he was found to possess two firearms and a large digital scale capable of weighing kilogram quantities (*Id.*). Petitioner arrived in Tennessee to deliver the agreed-upon 500 grams of methamphetamine to the confidential informant, although the substance he delivered was later determined to be pseudoephedrine (*Id.*). At his guilty plea hearing, Petitioner agreed to the correctness of a factual basis that included his admissions he had been dealing multi-pound quantities of methamphetamine for several months (Crim. Court File No. 64 at 10). The crime lab report was not withheld from the Court. The PSR, at paragraph 11, specifically stated the crime lab determined the substance to be pseudoephedrine. As this finding was contained within the PSR, Petitioner also knew of the crime lab determination but Petitioner did not raise this objection at the time of his sentencing.

Further, coconspirator Lynda Garcia informed the government she had been Petitioner's girlfriend and had helped him weigh, package, and deliver methamphetamine. She stated Petitioner received six to seven pounds of methamphetamine from Gabriel Garcia. She further stated she herself purchased two pounds of methamphetamine from Petitioner (PSR at ¶ 15). Petitioner contested none of these facts at his sentencing hearing. In upholding Petitioner's conviction, the Sixth Circuit noted Lynda Garcia's statements were used to determine drug quantity and the Court's determination was a conservative estimate. *Pilkey*, 55 Fed. Appx. at 745.

12

Petitioner has failed to show "cause" for his failure to previously raise this issue. He has also not shown any "actual prejudice" resulting from his failure to present this claim on direct appeal. Further, Petitioner's claim for relief on this ground is completely without merit. Thus, the Court will **DENY** Petitioner's claim for relief on this ground.

### C. Ineffective Assistance of Counsel - Plea Agreement Entered Unknowingly

In Petitioner's third ground for relief, Petitioner claims he "entered into a [p]lea [a]greement, not knowing what was happening to him. Petitioner listened to his defense counsel." (Court File No. 1). Petitioner further states the plea agreement "does not contain a factual basi[s] for the plea agreement" and should have contained "the non-prosecuting agreement eliminating Counts I and III and being tried on Count II only (sic)" (*Id.*). Petitioner claims his counsel "failed to tell Petitioner about the lab report until late Nov. [20]01 and only after petitioner saw his [PSR] and requested copies of the lab report" (*Id.*).

Petitioner acknowledges in his Petition he knew *before* his sentencing on April 5, 2002 the crime lab had determined the substance he distributed on the date of his arrest was pseudoephedrine (*Id.*). Petitioner failed to raise this issue at sentencing or on direct appeal. Petitioner failed to show "cause" for this failure. Further, he has shown no "prejudice" resulting from his failure to present this claim on direct appeal.

To the extent Petitioner is arguing his guilty plea was made unknowingly, at Petitioner's rearraignment hearing, the Court conducted a thorough inquiry of Petitioner to ensure Petitioner was aware of his rights and was knowingly and voluntarily pleading guilty. In affirming the Court's judgment, the Sixth Circuit found the following

> The rearraignment transcript shows that Pilkey understood his rights, the nature of the charges, and the consequences of his plea. He indicated that his guilty plea was

13

> voluntary, and acknowledged a sufficient factual basis for his plea. Pilkey subsequently moved to dismiss his attorney and drop his plea agreement, but the district court properly dismissed those motions at Pilkey's request. Thus, we conclude that his guilty plea was constitutionally valid.

*U.S. v. Pilkey*, 55 Fed. Appx. 744, 745 ( 6th Circuit 2003). As such Petitioner's claims for relief on this ground are meritless. Thus, the Court will **DENY** Petitioner's claim for relief on this ground.

### D. Enhancements Improperly Applied to Petitioner's Sentence

In his fourth ground for relief, Petitioner claims (1) he should not have been sentenced for the distribution of the specified amount of methamphetamine, only pseudoephedrine; and (2) he should not have received a two-level enhancement for possession of a weapon. Petitioner states "[t]here was NO METHAMPHETAMINES distributed it was pseudoephedrine. This enhancement was not charged in indictment = +2 levels." Petitioner essentially raised this issue in his direct appeal. The Sixth Circuit noted:

> Counsel now suggests that Pilkey may wish to argue that he was not responsible for 1.5 kilograms of methamphetamine. However, a codefendant made statements which indicated that Pilkey had distributed more than six pounds of methamphetamine to her. Thus, his offense level was justified by a conservative estimate of the drugs that were involved in the conspiracy.

*Pilkey*, 55 Fed. Appx. at 745. As discussed above, the indictment charged Petitioner with distribution of methamphetamine based upon the statements of Lynda Garcia and the recorded and monitored transaction set up as a sale of methamphetamine to a confidential informant. The quantity of drugs used for sentencing came from Lynda Garcia's statements which indicated she, *on other occasions*, saw Petitioner package a quantity of methamphetamine. As to the drug quantity used for sentencing, the Sixth Circuit found the estimate based on Lynda Garcia's statements to be "conservative." *Id*.

In his addendum, Petitioner argues "[t]he plea colloquy posited 'methamphetamine' being

14

the controlled substance, however, the PSR differs as do the Lab Report Analysis, which asserts 'no controlled substance detected'" (Addendum, Case No. 1:04-cv-371). Petitioner goes on to state "[v]iewing the evidence provided as documented would indicate Petitioner's innocence, factually." Petitioner's argument focuses only on his possession of pseudoephedrine on the date of his arrest but does not consider the additional evidence obtained from Lynda Garcia (outlined above) and Gabriel Garcia, who admitted to law enforcement officers he conspired with Petitioner to distribute methamphetamine. Further, during his guilty plea, Petitioner stated under oath he had read the facts contained within the factual basis filed with the Court and the facts were true and correct (Crim. Court File No. 64 at 10). The factual basis states Petitioner agreed to cooperate after his arrest and stated he had acquired "multi-pound quantities of methamphetamine from Gabriel Garcia in Texas, which methamphetamine was eventually distributed by [Petitioner] in the Eastern District of Tennessee" (*Id.*).

With respect to Petitioner's argument regarding the enhancement for possessing a weapon, the Sixth Circuit found the following on his direct appeal:

> Pilkey also argues that the district court improperly enhanced his offense level for possessing a firearm under USSG § 2D1.1(b)(1). However, a loaded pistol was found in a truck in which Pilkey was riding when he sold methamphetamine to a confidential informant and a shotgun and scales were found in the room where he was staying. Thus, the court did not commit plain error as Pilkey did not show that it was clearly improbable that these firearms were connected to his offense. *See United States v. Hill*, 79 F.3d 1477, 1485-86 (6th Cir.1996).

*Id.* At a minimum, the Government's evidence shows Petitioner was in constructive possession of the gun found in the car. Petitioner's claims are completely without merit. To the extent Petitioner is arguing ineffective assistance of counsel for failing to object to the gun enhancement or the drug quantity, Petitioner's counsel was not deficient in failing to raise the objections, nor was Petitioner

15

prejudiced by their omission. Thus, the Court will **DENY** Petitioner's claims for relief on this ground.

> **E.     Ineffective Assistance of Counsel Generally**

In his final claim for relief, Petitioner states his counsel was ineffective because she (1) withheld a non-prosecuting agreement from the Court; (2) withheld the lab report from the Court; and (3) "coached the petitioner into signing a bad Plea Agreement knowing she had a document (lab report) that would have helped the petitioner."

In *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. First, a defendant may only attack the voluntary and intelligent character of a guilty plea by showing the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56-57. As discussed in *Strickland* and reiterated in *Hill*, the defendant must show defense counsel's representation fell below an objective standard of reasonableness. *Id.* at 57. Further, a defendant must also show there was reasonable probability, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* at 59.

Petitioner's claims do not meet the heavy burden of showing ineffective assistance of counsel. First, Petitioner does not show his counsel made any errors. As discussed above, Petitioner admitted under oath there were no other agreements made with the Government outside those contained within the plea agreement. As the finding of the crime lab was contained within the PSR, the Court knew of the results of the lab report. Petitioner's counsel did not withhold the information from the Court. Finally, assuming Petitioner's counsel did recommend Petitioner enter into the plea agreement, such advice was within the range of competence demanded of attorneys in criminal cases

16

given the facts and statements of Petitioner and coconspirators Lynda Garcia and Gabriel Garcia.

The procedural history also shows the Court was diligent in being assured Petitioner intended to enter into the plea agreement and did not wish to withdraw from the plea agreement after he learned of the results of the lab report. On February 6, 2002 – almost six months after Petitioner pleaded guilty, more than two months after the presentence report was published[2] (containing the results of the lab report), and two months before Petitioner was sentenced – Magistrate Judge Carter held a hearing on Petitioner's motion to withdraw from the plea agreement and dismiss his counsel. Petitioner told Magistrate Judge Carter he wished to "pull" his motion. Petitioner summed up the situation in this manner:

> Well, after talking to Ms. LaLumia today and getting some of the misunderstandings that maybe that I had in my mind taken care of, I would honestly just like to pull that motion because I'm confident that the things that bothered me are now over with.

(Crim. Court File No. 95 at 5.) Later in the same hearing, Magistrate Judge Carter asked Petitioner if he wanted to withdraw from his plea agreement.

| Magistrate Judge: | . . . you're saying you don't want to withdraw your plea agreement, is that right? |
|---|---|
| Defendant: | Yes, sir. |

(*Id*. at 6). This February 6, 2002 hearing is important for two reasons. First, it shows after Petitioner learned the crime lab had determined the substance Petitioner had delivered was pseudoephedrine and not methamphetamine, he still wished to be bound by his plea agreement. Second, Petitioner had ample opportunity to tell the Magistrate Judge (1) in his opinion he had been granted partial

---

[2]During Petitioner's first sentencing hearing on December 21, 2001, Defendant acknowledged he had: (1) received the PSR, (2) a chance to read the PSR and (3) sufficient time to go over the report with his attorney (Crim. Court File No. 76 at 2).

17

immunity; and (2) his counsel had given him bad advice about accepting a plea agreement. However, Petitioner did not raise any of those allegations during the hearing.

Further, there is no indication, but for counsel's alleged errors, Petitioner would have pleaded not guilty and gone to trial. As noted in paragraphs 14 and 16 of the PSR, both Petitioner and his source, Gabriel Garcia, told agents they conspired with one another to distribute methamphetamine. As revealed in paragraph 14, Petitioner himself admitted receiving eight to nine pounds of methamphetamine from Gabriel Garcia. Further, Petitioner received a substantial break by being sentenced to a reduced term of imprisonment based upon his substantial assistance to the Government. If he had gone to trial, it is unlikely he would have received this substantial benefit.

As a result, the Court finds Petitioner's claims of ineffective assistance of counsel fail both prongs of the *Strickland* test. Counsel was not deficient if she advised Petitioner to plead guilty, nor was Petitioner prejudiced by counsel doing so. Petitioner conceded he could have been prosecuted for Count Two, and given his frank admissions to law enforcement, it is clear why Petitioner has not asserted he would have pleaded not guilty and demanded a trial. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### IV.    CONCLUSION

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a §

18

2255 motion.[3] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

---

[3]The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**